FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
1:23 pm, Nov 20, 2025
JEFFREY P. COLWELL, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**FRANK DANIEL MALOIT**,

Plaintiff,

v.

**SKYLAR WEITZEL**, an individual,

and **JOHN DOES 1-5**, whose true identities are presently unknown,

Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Frank Daniel Maloit ("Plaintiff") alleges as follows against Defendant Skylar Weitzel ("Defendant") and John Does 1–5 (collectively, "Defendants 1-5"):

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is an individual residing in Erie, Colorado (Weld County).

2. Defendant is an individual residing in Erie, Colorado (Boulder County).

3. Defendants 1-5 are likely individuals residing in and around Erie, Colorado.

4. Pursuant to 28 U.S.C. § 1331, "the district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States."

5. This action is brought pursuant to 42 U.S.C. § 1985(3). Plaintiff additionally references various federal and state criminal statutes (18 U.S.C. §§ 876, 241, 2331(5); C.R.S. §§ 18-3-602,

1

18-9-111, and 18-3-206) as factual predicates, evidence of intent, and standards supporting Plaintiff's civil claims, including negligence per se and exemplary damages.

6. 42 U.S.C. § 1985(3) provides a civil cause of action where two or more persons conspire for the purpose of depriving any person or class of persons of the equal protection of the laws or equal privileges and immunities under the laws, and where an act in furtherance of the conspiracy results in injury to a person or property, or deprivation of any right or privilege of a citizen of the United States.

7. 18 U.S.C. § 876(c) states that any person who knowingly deposits, or causes to be delivered by the Postal Service, any communication addressed to another person that contains a threat to injure the addressee or another shall be fined or imprisoned. Plaintiff cites this statute solely as evidence of the nature, severity, and context of Defendant's conduct.

8. 18 U.S.C. § 241 criminalizes conspiracies to injure, oppress, threaten, or intimidate any person in the free exercise or enjoyment of constitutional or federal rights. Plaintiff cites § 241 as evidence of the federal policy against conspiracies to interfere with civil rights. Plaintiff does not assert § 241 as a private cause of action.

9. 18 U.S.C. § 2331(5) defines "domestic terrorism" as acts dangerous to human life that violate federal or state criminal law and appear intended to intimidate or coerce a civilian population, occurring within the territorial jurisdiction of the United States. Plaintiff references this definition exclusively as statutory context relevant to his request for declaratory and injunctive relief.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as the state claims arise from the same nucleus of operative facts as the federal claims and form part of the same case or controversy.

11. Colorado state law provides additional standards, remedies, and statutory context relevant to claims arising from threats, intimidation, harassment, and conduct causing serious emotional distress.

12. Colo. Rev. Stat. § 18-3-602(1) defines stalking to include making credible threats and repeatedly following, approaching, surveilling, or communicating with another person in a manner that would cause, and does cause, serious emotional distress. Plaintiff cites this statute to establish statutory standards and public policy relevant to his claims; it is not asserted as a standalone civil cause of action.

13. Defendant admitted to researching approximately twenty victims, gathering their personal information, preparing materials, assembling threatening envelopes over multiple days, and mailing them in batches from multiple locations. These repeated acts of research, preparation, and targeted communication demonstrate a pattern of behavior similar to stalking as defined under Colorado law. Defendant's contradictory statements indicate he likely engaged in undisclosed surveillance of Plaintiff. Plaintiff alleges that further information regarding the extent of Defendant's repeated conduct and surveillance efforts is likely to be revealed through discovery. Although Plaintiff does not assert stalking as a civil cause of action, the conduct admitted by Defendant is consistent with the type of repeated acts described in C.R.S. § 18-3-602. These facts also support Plaintiff's request for injunctive relief.

14. Colo. Rev. Stat. § 18-9-111(1) defines harassment to include initiating anonymous or indirect communications intended to harass or threaten bodily injury or property damage; making repeated intrusive communications that invade privacy; or directing insults or coarse language likely to provoke a violent or disorderly response. Defendant's contradictory statements indicate

he likely engaged in undisclosed anonymous communication toward Plaintiff. Plaintiff references this statute as evidence of the statutory norms governing harassment and intimidation.

15. Colo. Rev. Stat. § 18-3-206 defines menacing as knowingly placing or attempting to place another person in fear of imminent serious bodily injury through threats or physical action. Plaintiff cites this statute as a standard of conduct supporting negligence per se and exemplary damages.

16. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391, as Defendant resides in the State of Colorado and the events giving rise to this action occurred within the District.

## GENERAL ALLEGATIONS

17. Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

18. Plaintiff made a statement during public comment at the Erie Town Council on September 23rd, 2025 requesting that the Town of Erie stop funding a partisan local publication named *Yellowscene*.

19. Plaintiff received an envelope containing several items from Defendant on October 6th, 2025 at Plaintiff's home address.

20. The envelope did not have a return address.

21. The envelope contained a condolences card, a shimmering, granular red substance, Gushers candy wrappers, and a printed message cut from a larger piece of paper.

22. The printed message stated "Sorry for the loss of your savior. Please enjoy some of Charlie's favorite candy for your necks Circle Kirk. All the candy leaked out before we could get it in the ambulance…errr envelope". (incorrect spellings appear intentional)

4

23. Upon opening the envelope, Plaintiff reasonably feared the presence of a dangerous powder or substance (e.g., anthrax) and notified authorities.

24. Plaintiff contacted his lawyer to alert his ex-wife, Danielle Maloit, about the threat, incurring legal fees for both parties.

25. Plaintiff immediately locked all the doors to his home.

26. Over the preceding week, other current and former residents of Erie, Colorado, including a former city council candidate who currently resides in Loudoun County, Virginia, received similar threatening letters.

27. HAZMAT teams responded to the locations of several of the letters upon receipt.

28. Plaintiff received a warning from the other recipients of Defendant's threats because Plaintiff ran for Erie Town Council in the fall of 2024 and for the statewide seat on the Colorado Board of Education in 2022.

29. Plaintiff contacted Special Agent Booth regarding the letter.

30. Special Agent Booth met with Plaintiff at Plaintiff's home on October 7th, 2025.

31. Special Agent Booth collected the envelope and its contents as evidence in an ongoing investigation into a series of threatening letters.

32. Plaintiff has three children aged 16, 14, and 10 who live equally between Plaintiff's house and his ex-wife's house.

33. The schools of Plaintiff's children are public record due to post-decree filings with his ex-wife.

34. Plaintiff told his children to stay away from windows in the home, to keep the doors locked, and to refrain from opening the door for any strangers.

35. Because the sender of the threat was unknown, Plaintiff told his children to be proactive in alerting teachers and other adults if they felt something or someone seemed "off."

36. Special Agent Booth and Special Agent Phillip of the FBI along with Detective Burch of the Erie Police Department visited Defendant's home on October 21st, 2025.

37. Detective Burch's Supplemental Narrative in the Erie Police Record for Case # 25-2656 indicate prior investigation had confirmed that Defendant had purchased items from the local Walmart in Lafayette, Colorado that were consistent with materials recovered from several suspicious letters sent through the mail.

38. After exiting his home and confirming his identity with the law enforcement officers, Defendant immediately admitted to having sent the letters.

39. Defendant stated "a couple people doxed one of my friends that lives in Erie."

40. Defendant stated "nobody, myself included, is very good at restraint or filter."

41. Defendant stated "I will fully admit that I sent, it was glitter, because a lot of the same people that were attacking my friends that I care about are also vehemently anti-pride and… certainly not my finest decisions."

42. When asked by Agent Booth how Defendant chose his victims, Defendant stated "They're all the loudest MAGA trolls and, god I'm saying this because if you guys are Trump supporters then I apologize for being essentially your enemy."

43. Defendant stated he sent twenty (20) threatening letters.

44. Defendant stated

> "I got one book of stamps. I got cards. It was… so embarrassing. It was definitely me. I want to say trying to lash out. But trying to let them know that it's one thing for us to talk shit to and against and about each other on Facebook, but three of my friends that I've known for a long time, they had their public information, their employer, posted on these Facebook pages and my friends were

reaching out to me saying 'hey this is totally wrong.' And if I was old enough and mature enough to let bygones be bygones I would have told them this is just one more thing that's going to blow over in a week or 10 days and then we'll have some other chaotic catastrophe for us to deal with."

45. Defendant stated "I definitely did not do a good job of restraining my impulses."

46. Defendant stated "I was very careful to not say like 'you guys are next' or like 'this is what happens' like that wasn't my intention. It was really cowardly by doing it anonymously."

47. Defendant stated "It stemmed from the Charlie Kirk killing."

48. Defendant told Agent Booth that Defendant used Google to find the addresses of all Defendant's victims.

49. Defendant stated his intent was

"A big fuck you. I mean like literally, like just, I didn't, like I said, if I was thinking clearly I wouldn't done it because I didn't really have a desired outcome other than…. Not to get off on a tangent, but like there's a woman who lives in the area. Her name is Shavonne Blades, she's the owner of Yellowscene Magazine, she found out from a friend of a friend that there was a private 'facegroup' that was mostly that mostly involved people on the far right."

50. Defendant stated

"My intent was if you're gonna dox my friends, all of our information is public, and there was no good intent to it like it certainly wasn't meant to threaten them. The glitter was a tacky fucking like, let me throw some pride glitter in your so when you open the envelope not only do you see that somebody's making a *really dark twisted joke about* gushers candy and *what Chatlie Kirk's neck turned into.* And the glitter was like 'they're gonna have to fucking grab their vacuum and clean their house." (emphasis added)

51. Defendant stated

"I'm smart enough and I'm dumb enough at the same time to know that a) I shouldn't have done it but b) I was very *I was very like, I don't want to say calculated because that makes me sound like a fucking psychopath, but I was very careful* to not saying anything

7

that I thought could be implied as me trying to threaten these people." (emphasis added)

52. Defendant stated "I wish I had the ability to go back in time and realize this is ten seconds of self-glorifying action is not worth the potential repercussions."

53. Defendant stated "I got booted and banned from that page (Erie Colorado Facebook page) like two years ago and it's probably one of the best things that ever happened to me."

54. Defendant stated

> "I know I didn't send one to Brandon Bell, even though I wanted to… He's on the council and he has he sent me uh email directly from the town council, from the Erie government email address… I figured he's on the council, I should let him be miserable without me adding to it."

55. When asked by Detective Burch if Defendant had placed anything else in the envelopes Defendant stated "Just a note that was like, I honestly don't remember what they said… It was a bunch of fancy words to try and say 'fuck you.'"

56. After being told that Defendant's victims had been placed in fear and had to let their children know about the threat, and that HAZMAT teams had been involved, Defendant only expressed remorse for wasting the time of the HAZMAT teams to investigate glitter.

57. Defendant then stated "I can see how even the biggest assholes on the outside still have family and people they care about," showing his continuing disdain for his victims.

58. Defendant reiterated his intent stating "My intention was to say 'fuck you' and 'you can dox my friends and put public information out there on the street, that street goes both way.'"

59. Defendant states he sent multiple groups of letters from at least two different locations, identifying the mail drop box by King Soopers and the mailbox in his neighborhood.

60. When asked by Detective Burch if there were other individuals involved in Defendant's threatening activities Defendant stated

> "I can't say that with a hundred percent certainty, but like there's not like a group of us that are like Ocean's Eleven type conspiring on like who's going to do this on Tuesday or, Billy, did you read the newsletter? Today's the day you go and spray fake fart juice on people's mailboxes."

61. Defendant sent an email to the FBI and Detective Burch later on October 21st, 2025 with a list of names of Defendant's victims.

62. The list of Defendant's victims is in the Erie Police Report for Case #25-2656.

63. Defendant did not include Andrew Sawusch in his list of victims.

64. Andrew Sawusch is an appointed official on the Erie Planning Commission and a former elected representative on the Erie Town Council

65. The Town of Erie filed a Temporary Protective Order on behalf of Andrew Sawusch against Defendant in Weld County, Colorado: Docket 2025CV31088. Defendant settled with the town agreeing to a one-year protective order.

66. Another victim, Ryan Kenward of Loudoun County, Virgina was granted a Permanent Protective Order against Defendant: GV25014877-00.

67. One of Defendant's victims, John Ahrens, was an active candidate for a seat on the St. Vrain Valley School Board, having filed his candidacy on August 21st, 2025.

68. As a result of Defendant's actions, Plaintiff has incurred expenses for, among other things, legal expenses to alert his ex-wife of the threat from Defendant, in addition to suffering mental distress, anxiety, fear, and uncertainty.

69. As a result of Defendant's actions, Plaintiff has had to alert his employer of the threat posed by Defendant.

70. Plaintiff has suffered significant embarrassment and anxiety due to the impact of alerting Plaintiff's employer because of Defendant's actions.

71. Plaintiff has been forced to alert the schools of his three children of the threat from Defendant and the existence of the Temporary Protective Order against Defendant.

72. Plaintiff has suffered significant stress due to fears for his children's safety as a direct result of Defendant's actions.

73. Defendant's actions have placed Plaintiff at a high level of vigilance necessitating changes to Plaintiff's routines and life to ensure Plaintiff is safe from Defendant.

74. Plaintiff has used multiple days of PTO related to Defendant's threats, incurred numerous trips to the Weld County Court, conducted over 100-hours of legal research and preparation for this action and the Protective Order against Defendant, and other associated costs related to Defendant's actions.

## CLAIM ONE
*Declaratory and Injunctive Relief – Reference to 18 U.S.C. § 2331*

75. Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

76. Plaintiff acknowledges that 18 U.S.C. § 2331 does not create a private civil cause of action but cites it solely for definitional context.

77. Plaintiff references 18 U.S.C. § 2331 exclusively for the statutory definition of "domestic terrorism" to provide context for the nature and severity of Defendant's conduct and for purposes of Plaintiff's request for injunctive and declaratory relief.

78. Based on the conduct described in the General Allegations, Plaintiff seeks a judicial declaration that Defendant's conduct constitutes politically motivated intimidation that meets the definitional framework of § 2331 and further seeks appropriate injunctive relief to prevent future threats, intimidation, or similar conduct by Defendant.

**CLAIM TWO**
*Violation of 42 U.S.C. § 1985(3) – Conspiracy to Interfere with Civil Rights*

79. Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

80. Defendant acted with hostility toward Plaintiff's political advocacy, political speech, and civic participation.

81. Defendant targeted Plaintiff as part of a group of individuals who Defendant states he identified as sharing similar political viewpoints and public participation.

82. Plaintiff alleges that Defendant's conduct was intended to intimidate Plaintiff and others from engaging in lawful political advocacy, speech, and civic participation, conduct protected by 42 U.S.C. § 1985(3)'s Support or Advocacy Clause.

83. Plaintiff alleges on information and belief that Defendant, together with one or more unknown persons ("John Does 1-5") who assisted, encouraged, or participated in the planning, selection of victims, or dissemination of addresses or information, engaged in a conspiracy or agreed-upon plan to harass, intimidate, or threaten Plaintiff and others with similar political viewpoints.

84. Defendant stated "if I was old enough and mature enough" he would have told his friends "to let bygones be bygones," suggesting he coordinated with at least two other individuals in the advancement of the plot to intimidate and silence Defendant's victims.

85. Defendant's statements about being banned from certain Facebook pages, along with his statements that he was made aware of other private pages by Shavonne Blades and comments from the previously referenced unknown friends, indicate Defendant coordinated with others to select victims and advance the conspiracy to silence free speech Defendant disagreed with.

86. The identities of John Does 1–5 will be amended upon discovery.

87. Defendant's own admissions, combined with the coordinated nature of similar threatening letters sent to multiple individuals, provide plausible grounds to allege that Defendant did not act entirely alone.

88. Defendant's acts were undertaken with the purpose and effect of intimidating Plaintiff and others he intentionally targeted because of their political advocacy from engaging in lawful political activity, speech, and community participation.

89. As a direct and proximate result of Defendant's conduct, Plaintiff suffered fear, distress, emotional harm, and interference with his ability to exercise federally protected rights.

90. Plaintiff seeks compensatory, punitive, and injunctive relief under § 1985(3).

### CLAIM THREE
*Intentional Infliction of Emotional Distress (Outrageous Conduct)*

91. Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

92. Defendant knowingly sent an anonymous letter to Plaintiff containing references ("gushers" and references to "necks" and "ambulances") to the recent political assassination of Charlie Kirk, creating fear of physical harm, and deliberately targeting Plaintiff's home.

93. Such conduct constitutes extreme and outrageous behavior under Colorado law, exceeding all bounds of decency.

94. Defendant intended to cause Plaintiff severe emotional distress or acted with reckless disregard of the likelihood that such distress would occur.

95. Defendant stated to law enforcement that he was "calculated" in his word choices, indicating that he knew his words could be construed as threatening and thus taking steps to mask his true intentions.

96. Plaintiff suffered severe emotional distress as a result.

97. Plaintiff is entitled to compensatory and punitive damages.

## CLAIM FOUR
*Colo. Rev. Stat. § 18-3-206 – Menacing – Civil Assault*

98. Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

99. Plaintiff reasonably believed the substance could be hazardous, such as Fentanyl or Anthrax, and that Plaintiff and his children were in imminent danger based upon the references to the Charlie Kirk assassination which occurred in front of Kirk's children.

100. Defendant confirmed that his intention using the Gushers candy was to reference what the assassin's bullet did to Charlie Kirk's neck.

101. Defendant's anonymous threatening communication, combined with its references to political assassination and inclusion of unknown powder or debris, placed Plaintiff and his three minor children in reasonable apprehension of imminent bodily harm.

102. Defendant's actions constitute civil assault under Colorado law.

103. Plaintiff is entitled to compensatory and punitive damages.

## CLAIM FIVE
*Harassment – Colo. Rev. Stat. § 18-9-111(1)*

104. Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

105. Defendant's conduct constitutes harassment under Colorado Revised Statutes § 18-9-111, including anonymous threats intended to alarm, annoy, or harass Plaintiff.

106. While § 18-9-111 is a criminal statute and does not create a private cause of action, it provides a statutory standard of care supporting Plaintiff's civil claims.

107. Defendant's violations of § 18-9-111 constitute negligence per se and evidence of willful and wanton conduct.

### CLAIM SIX
*Negligence Per Se*

108. Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

109. Defendant violated multiple Colorado criminal statutes designed to protect the safety and emotional well-being of individuals, including C.R.S. § 18-9-111 (Harassment) and C.R.S. § 18-3-206 (Menacing) (referenced as factual predicates only).

110. These statutes establish a duty of care to avoid conduct that places others in fear or causes emotional distress.

111. Defendant's conduct also aligns with the statutory pattern of repeated threats and communications described in C.R.S. § 18-3-602. Defendant researched multiple victims, engaged in multiple acts of preparation, and communicated threats as part of a coordinated multi-day scheme. These repeated acts demonstrate violations of statutory standards intended to protect individuals from stalking-like conduct, further supporting Plaintiff's negligence per se and exemplary damages claims.

112. Defendant's violation of those statutes constitutes negligence per se.

113. Plaintiff is entitled to compensatory and punitive damages.

### CLAIM SEVEN
*Exemplary (Punitive) Damages – Colo. Rev. Stat. § 13-21-102*

114. Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

115. Defendant acted with fraud, malice, and willful and wanton disregard for Plaintiff's rights and safety.

116. Defendant's conduct, including planning over multiple days, researching victims, assembling materials, and sending threatening communications anonymously, constitutes willful and wanton conduct under C.R.S. § 13-21-102.

117. Plaintiff is entitled to exemplary damages under Colorado Revised Statutes § 13-21-102.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. That this matter be set for jury trial on all issues so triable;
2. Judgement against Defendant as follows:
    a. Economic and noneconomic damages caused by Defendant's actions;
    b. Punitive damages as allowed by law;
    c. Costs, attorney fees, and such other equitable relief as this Court deems just and proper.

Dated: November 20th, 2025

*/s/ Frank Daniel Maloit*

Frank Daniel Maloit
Representing Myself
365 Poppy View Lane
Erie, Colorado 80516